IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DANIEL J. GARDNER,

                Plaintiff,                No. 4-18-cv-450-CRW-HCA

vs.                                     ORDER GRANTING SUMMARY
                                           JUDGMENT FOR DEFENDANTS

WALMART STORES, INC. WALMART
STORES EAST, LP, and WALMART
TRANSPORTATION, LLC,

                Defendants.

Plaintiff Daniel J. Gardner (Gardner), a former Walmart employee, asserts against the three Walmart defendants (Walmart) a claim of age discrimination under the Iowa Civil Rights Act.

Walmart moves for summary judgment (Docket # 44). The court held an in-court hearing on the resisted motion on March 12, 2020; the court now grants summary judgment in favor of all defendants and against Gardner.

<u>Facts.</u> The following facts are undisputed.

1. From 1993 until February 23, 2017, Gardner served as the private fleet safety manager at Walmart's distribution center in Mount Pleasant, Iowa.
2. From 2013 to 2017, Gardner, as a Walmart safety manager, reported to a regional safety manager (rsm).
3. From 2014 to 2017, Gardner, as a safety manager, was subject to and understood that he was subject to Walmart's discipline policy, known as "performance tracking."
4. The performance tracking policy to which Gardner was subject from 2014-2017 provided for five levels, or "steps," of discipline: memo, first written performance tracking, second written performance tracking, third written performance tracking, and termination.
5. Under the performance tracking policy to which Gardner was subject from 2014-2017, discipline could be assessed at any level depending upon the severity of the conduct, such that a third written performance tracking could be assessed against a safety manager even if the safety manager did not have a first written performance tracking or a second written performance tracking pending at the time.
6. Under the performance tracking policy to which Gardner was subject from 2014-2017, a performance tracking level of discipline remained active on the employee's record for 12 months from the date that the employee received the

1

discipline.

7. Under the performance tracking policy to which Gardner was subject from 2014-2017, if an employee received a performance tracking discipline while he/she had an active third written performance tracking on his/her record, that employee's employment could be terminated.

8. From 2014 to 2017, Walmart had in place an employment policy known as "open door." Gardner knew the policy could be used to communicate to a supervisor a disagreement with discipline.

9. On January 28, 2016, Gardner conducted a training session for two Walmart drivers.

10. During the January 28, 2016 training session, Gardner posed a hypothetical scenario in which he named one of the drivers in the training ("Driver 1") as an example of an employee with a specific medical condition. Driver 1 later complained via written complaint to Walmart that he actually suffered from the medical condition and that Gardner had disclosed his personal health information. Walmart investigated the complaint as a violation of HIPAA policy.

11. Gardner's supervisors discussed Driver I's complaint with Gardner. Gardner provided to Walmart a written statement describing how he conducted driver trainings.

12. Gardner was directed to travel to Arkansas for meetings concerning Driver I's complaint about the alleged HIPAA violation in Gardner's training class. At no other time during his Walmart employment had he been previously summoned to Arkansas. He met with Michael Noble, the senior director of fleet safety compliance and Jeffrey Hammonds, the vice president of Walmart Transportation, Western Operations.

13. A few weeks after the Arkansas trip, Gardner received discipline documentation ("2016 third written) from Regional Safety Manager Jennifer Gray, his immediate supervisor. The 2016 third written memo stated Gardner had issues with judgment and leadership.

14. Gardner signed the 2016 third written performance tracking and returned it to Gray. Gardner did not "open-door" the 2016 third written performance tracking. Gardner understood that being on a third written performance tracking meant that he could face termination if he received another performance tracking discipline, if he was deemed to have an unacceptable job performance, or if he was deemed to have participated in unacceptable conduct during the next twelve months.

15. In August 2015, Gardner attended a Walmart safety manager seminar, during which safety managers were informed that Walmart was adopting a new Hazardous Materials Endorsement ("HME") policy.

16. On September 3, 2015, Gardner received an email from Walmart's senior manager of fleet services regarding the HME policy, attaching a copy of the HME policy, referring safety managers to the HME policy, and directing safety managers to contact their rsm or the senior manager of fleet services if they had questions regarding the HME policy.

17. As of September 2015, Gardner had access to the HME policy. He did not contact his rsm or the senior manager of fleet safety services regarding the HME policy. Gardner did not read the policy.

18. According to the HME policy, the safety manager was responsible for identifying those Walmart drivers without a valid HME and for notifying the operations managers of those drivers.

19. By e-mail sent to Gardner on September 3, 2015, Walmart informed him that "The Safety Manager will be responsible for follow-up with new drivers to ensure they have the required endorsement within 120 days." The HME policy provides that "if a driver has not received his/her HME by the 91st calendar day the driver will be removed from all driving and other safety sensitive functions without pay." The policy provides that Walmart drivers who failed to obtain their HME within 120 days of being hired were to be terminated.

20. On October 17, 2016, Walmart hired a driver ("Driver 2"), who did not have an HME at that time.

21. Although Driver 2 did not obtain his HME in accordance with the policy deadlines, he was not removed from driving after 91 days from hire and his employment was not terminated after 120 days from hire.

22. Gardner did not inform the operations managers that Driver 2 had passed the 90th day without obtaining the endorsement. Gardner informed his supervisors that Driver 2 should not be dispatched as of the 120th day from hire.

23. Gardner was unaware of the requirement that a driver was to be removed from all driving without pay if a driver had no endorsement after 90 days.

24. The HME policy was violated when Driver 2 continued to drive after 90 days of employment.

25. On February 23, 2017, Gardner attended a meeting at which Scott Reed presented Gardner with the option to resign or to be dismissed. Gardner chose to resign. He "open-doored" the termination decision to Walmart's senior vice president of transportation, Tracy Rosser. Rosser did not reverse the termination decision.

26. On May 2, 2017, Gardner filed an administrative complaint with the Iowa Civil Rights Commission; he cross-filed that complaint with the Equal Employment Opportunity Commission.

Analysis. The court applies the familiar summary judgment standard. Summary judgment is an appropriate disposition when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Zubrod v. Hoch, 907 F.3d 568, 575 (8th Cir. 2018). The parties seeking summary judgment bear the initial burden of demonstrating the absence of a genuine issue of fact for trial. Robinson v. White County, Ark., 452 F.3d 706, 714 (8th Cir. 2006). Once the moving parties satisfy their initial burden, the nonmoving party must go beyond the pleadings and, by his own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial.

In employment discrimination cases a plaintiff who lacks direct evidence of discrimination may survive summary judgment by showing a genuine dispute of fact under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McQuistion v. City of Clinton, 872 N.W.2d 817, 828-29 (Iowa 2015)(Iowa

3

legislature approves use of the McDonnell Douglas test). The McDonnell approach involves three steps: (1) the plaintiff must initially establish a *prima facie* case of discrimination; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must then show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual. McDonnell, 411 U.S. at 802-804.

The court assumes without deciding that Gardner carried his *prima facie* burden and that Walmart offered a legitimate non-discriminatory reason for Gardner's termination. With the undisputed facts in mind, the court concludes Gardner has not generated a genuine fact question about whether Walmart's proffered reason for Gardner's termination was pretextual. There is in this summary judgment record no evidence that Gardner's age was a factor in his termination. Gardner violated Walmart HME policy and he was terminated according to Walmart performance tracking policy. He has not produced evidence that Walmart retained an employee with an employment disciplinary record similar to Gardner's.

Summary. The court grants the Walmart defendants' motion for summary judgment against the plaintiff Daniel J. Gardner, with taxable costs assessed against Gardner.

IT IS SO ORDERED.

Dated this 23rd day of March, 2020.

CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT

4